IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN HOME ASSURANCE CO. and NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PENNSYLVANIA, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 05 C 5173 |
| McLEOD USA, INC.; TELECOMMUNICATIONS NETWORK DESIGN, INC.; and JEROLD RAWSON, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In this diversity suit, American Home Assurance Co. and National Union Fire Insurance Co. (collectively, the Insurers) seek a judgment declaring that McLeod USA Inc.'s general liability insurance policies do not require the Insurers to defend McLeod against two class action lawsuits brought under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 (Count 1). The Insurers also seek a judgment declaring that McLeod is obliged to reimburse them for the fees and expenses they incurred defending McLeod in the TCPA lawsuits (Count 2). In response, McLeod has filed a three count counterclaim. In Count 1, McLeod seeks a judgment declaring that its insurance policies require the Insurers to defend it against the TCPA lawsuits. In Count 2, McLeod alleges that the Insurers breached the terms of the insurance policy, and in Count 3, McLeod seeks damages for the Insurers' "vexatious and unreasonable conduct" pursuant to 215 ILCS 5/155.

The Insurers have moved for summary judgment on Count 1 of their amended complaint and on all counts of McLeod's counterclaim. McLeod has moved for summary judgment on Count 1 of the Insurers' amended complaint and on Counts 1 and 2 of its counterclaim. For the following reasons, the Court grants the Insurers' motion and denies McLeod's motion.

**Facts**

The facts of this case are nearly identical to the facts in a number of other cases filed around the country. In a nutshell, the dispute concerns whether two insurance companies are required to defend lawsuits alleging that McLeod violated the TCPA by sending junk-faxes. In May 2003, Telecommunications Network Design, Inc. and Jerold Rawson filed class action lawsuits seeking $500 for each fax sent to thousands of class plaintiffs, who had no prior business relationship with McLeod. After initially defending the lawsuits, the Insurers changed course and refused to continue the defense, claiming that McLeod's general liability insurance policies did not cover the lawsuit.

The insurance policies at issue contain two clauses that McLeod contends require the Insurers to defend the lawsuits. The first clause requires the Insurers to defend any lawsuit seeking damages for advertising injuries. Advertising injuries are defined as "oral or written publication of material that violates a person's right to privacy." The second clause requires the Insurers to defend any lawsuit seeking "property damages," unless the insured "expected or intended" the property damage to occur.

**Discussion**

When a district court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Entry of summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

When a district court exercises diversity jurisdiction, it must apply state law as the highest court of that state would apply it. *See AAR Aircraft & Engine Group, Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001).

### 1. Advertising injury

The parties agree that Illinois law governs the dispute.[1] Consequently, the first question presented is whether the Illinois Supreme Court would conclude that a junk-fax lawsuit filed under 47 U.S.C. § 227 seeks damages for an advertising injury, defined in the insurance policies as an "oral or written publication of material that violates a person's right to privacy."

In Illinois, "[t]he construction of an insurance policy and a determination of the rights and obligations under it are questions of law for the court and appropriate subjects for disposition by summary judgment." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 359 Ill. App. 3d 872, 877, 834 N.E.2d 562, 567 (2005). "In determining whether an insurer has a duty to defend its insured in an underlying lawsuit, the court must look to the allegations in the underlying complaint and compare [the] allegations to the relevant coverage provisions of the insurance policy." *Am. Family Mut. Ins. Co. v. Enright*, 334 Ill. App. 3d 1026, 1029, 781 N.E.2d

---

[1] Both parties maintain that no conflict of law exists. *See* Defs. Mem at 2; Pls. Mem. at 10. Where there is no conflict, Illinois choice of law principles dictate that the law of the forum state governs. *See Sterling Fin. Mgmt., L.P. v. UBS Paine Webber*, 336 Ill. App. 3d 442, 447, 782 N.E.2d 895, 899 (2002); *see also Richards-Wilcox, Inc. v. Minsor Powertrain Systems, LLC*, No. 02 C 8494, 2005 WL 1126548, *2 (N.D. Ill. May 5, 2005).

394, 397 (2002). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions, then the insurer has a duty to defend the insured in the underlying action." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393, 620 N.E.2d 1073, 1079 (1993).

To date, three courts have attempted to predict the Illinois Supreme Court's position on whether junk-fax lawsuits fall under the terms of an insurance policy like the one in this case. The courts have arrived at different conclusions. *Compare Am. States Ins. Co. v. Capital Assocs. of Jackson County, Inc.*, 392 F.3d 939, 943 (7th Cir. 2004) (holding that insurer had no duty to defend); *St. Paul Fire & Marine Ins. Co. v. Brunswick Corp.*, 405 F. Supp. 2d 890, 895 (N.D. Ill. 2005) (same), *with Valley Forge*, 359 Ill. App. 3d at 888, 834 N.E.2d at 575 (holding that insurer had duty to defend). Other courts have also considered the issue – though they have applied the law of other states – and their outcomes are split as well. *Compare Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 642 (4th Cir. 2005) (holding that insurer had no duty to defend under Virginia law), *with Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.,* 442 F.3d 1239, 1248-49 (10th Cir. 2006) (holding that insurer had a duty to defend under Kansas law); *Nutmeg Ins. Co. v. Employer's Ins. Co. of Wausau*, No. Civ. A 3:04-CV-1762B, 2006 WL 453235, *10 (N.D. Tex. Feb. 24, 2006) (same under Texas law); *Western Rim Inv. Advisors v. Gulf Ins. Co.*, 269 F. Supp. 2d 836, 848 (N.D. Tex. 2003) (same under Texas law), *aff'd mem.*, No. 03-10707, 2004 WL 1160165 (5th Cir. May 19, 2004); *Prime TV, LLC v. Travelers Ins. Co.*, 223 F. Supp. 2d 744, 752 (M.D.N.C. 2002) (same under North Carolina law); *TIG Ins. Co. v. Dallas Basketball, Ltd.*, 129 S.W.2d 232, 238-39 (Tex. App. Ct. 2004) (same under Texas law).

In *American States*, the Seventh Circuit considered whether an insurer had a duty to

defend a junk-fax lawsuit, in a case in which the insurance policy required the insurer to defend suits seeking damages resulting from an "advertising injury." *American States*, 392 F.3d at 939. As in this case, advertising injury was defined in the policy to include "[o]ral or written publication of material that violates a person's right of privacy." *Id.* The court first noted that under the common law of tort, privacy has two principal meanings: secrecy and seclusion. *Id.* at 941. The court said that a person asserts secrecy interests when he seeks to conceal private information and asserts seclusion interests when he seeks to prevent people from (for example) ringing his doorbell late at night. *Id.* The court then examined the relevant definition of "advertising injury" and, recognizing that the language reads like coverage of the tort of invasion of privacy, concluded that it covers only alleged violations of secrecy interests. *Id.* The court held that the insurer had no duty to defend, because a junk-fax lawsuit only alleges violations of seclusion interests. *Id.* at 942-43.

After *American States*, the Illinois Appellate Court weighed in on the issue in *Valley Forge*, 359 Ill. App. 3d at 872, 834 N.E.2d at 562. In *Valley Forge*, the court examined an insurance policy that contained the same clause that the Seventh Circuit had considered in *American States*. *Id.* at 876, 834 N.E.2d at 566. The Illinois Appellate Court reached a conclusion different from that of the Seventh Circuit. The court analyzed the meaning of the word "publication" and determined that a reasonable policy-holder could conclude that the term means transmittal of material, regardless of whether such transmittal is to a third party. *Id.* at 886, 834 N.E.2d at 573 (citing *Western Rim*, 269 F. Supp. 2d at 846-47). The court then examined the phrase "right to privacy" and concluded that, despite *American States*'s contrary conclusion, a reasonable policy-holder could understand it to protect both secrecy and seclusion

5

interests. *Id.* at 887, 834 N.E.2d at 574 ("privacy is privacy"). The court said that although the Seventh Circuit's "'contextual' approach to determining the meaning of privacy may find support in privacy actions under the common law," Illinois courts do not utilize that approach when construing insurance policies. Finally, the court noted that because the terms "publication" and "right to privacy" are susceptible to numerous interpretations, the policy should be construed against the insurer and in favor of a duty to defend. *Id.* at 884, 834 N.E.2d at 572 ("[I]f the words in the policy are susceptible to more than one reasonable interpretation, they are ambiguous and will be construed against the drafter of the policy and in favor of coverage.").

The Seventh Circuit has instructed that its rulings on state law are authoritative until a state's highest court rules otherwise. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004). Though intervening rulings by state appellate courts may convince the Seventh Circuit to overrule its precedent, they do not "liberate district judges from the force of [the Seventh Circuit's] decisions." *Id.* Accordingly, the Seventh Circuit's interpretation of the phrase "advertising injury" binds this Court, regardless of whether we believe *Valley Forge* represents the likely position of the Illinois Supreme Court.[2] If McLeod believes that *Valley Forge* sheds new light on the Illinois Supreme Court's eventual position on this issue, it may ask the Seventh Circuit to reconsider *American States* or to certify the question to the Illinois Supreme Court. *See* 7th Cir. R. 52; Ill. Sup. Ct. R. 20.

---

[2] We note that neither side cited *Reiser* in their briefs.

6

### 2. Property damage

McLeod also argues that the Insurers are required to defend the TCPA lawsuits under the insurance policies' property damage provision, which covers lawsuits seeking redress for property damage but excludes coverage for acts that are "expected or intended from the standpoint of the insured." McLeod contends that the underlying suits are not excluded from coverage because they allege negligent – as opposed to intentional – conduct. Specifically, the TCPA lawsuits allege that McLeod "should have known that the faxes violated the TCPA," suggesting that McLeod sent some of the faxes erroneously believing that they were authorized by the recipient. *See* Defs. Reply at 3.

This argument, however, was expressly considered and rejected by the Seventh Circuit in *American States*:

> For completeness we add that the property-damage clause in the policy is no more useful to Capital Associates; junk faxes use up the recipients' ink and paper, but senders anticipate that consequence. *Senders may be uncertain whether particular faxes violate § 227(b)(1)(C) but all senders know exactly how faxes deplete recipients' consumables.* That activates the policy's intentional-tort exception (which applies to the property-damage coverage though not the advertising-injury coverage): it forecloses coverage when the recipient's loss is "expected or intended from the standpoint of the insured." Because *every* junk fax invades the recipient's property interest in consumables, this normal outcome is not covered.

*American States*, 392 F.3d at 943 (first emphasis added, second emphasis in original). Though courts applying the law of different states have come to a contrary conclusion, s*ee Park Univ.*, 442 F.3d at 1247; *Prime TV*, 223 F. Supp. 2d at 750-51, we are required to follow the law of the Seventh Circuit absent contrary authority from the Illinois Supreme Court. *See Reiser*, 380 F.3d

7

at 1029.[3]

In sum, no jury reasonably could find that the TCPA lawsuits allege damage resulting from the "publication of material that violates a person's right to privacy" or that the lawsuits allege property damage that was not "expected or intended from the standpoint of the insured."

**Conclusion**

For the foregoing reasons, the Court grants the plaintiffs' motion for partial summary judgment [docket no. 41] on Count 1 of their amended complaint and on Counts 1, 2, and 3 of McLeod's counterclaim. The Court denies McLeod's motion for partial summary judgment [docket no. 47] on Count 1 of the plaintiffs' amended complaint and on Counts 1 and 2 of McLeod's counterclaim. The case is set for a status hearing on July 17, 2006 at 9:30 a.m. to determine what, if anything, remains to be determined in this case.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 5, 2006

---

[3] Because the Insurers have no duty to defend the TCPA lawsuits, they cannot be held liable for "vexatious and unreasonable conduct" under 215 ILCS 5/155. *See First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 807 (7th Cir. 2002).