# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AMERICAN HOME ASSURANCE CO. and NATIONAL UNION FIRE INSURANCE CO. OF PITTSBURGH, PENNSYLVANIA, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 05 C 5173 ) |
| McLEOD USA, INC.; TELECOMMUNICATIONS NETWORK DESIGN, INC.; and JEROLD RAWSON, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In this diversity suit, American Home Assurance Co. and National Union Fire Insurance Co. (collectively, the Insurers) seek a judgment declaring that McLeod USA Inc.'s general liability insurance policies do not require the Insurers to defend McLeod against two class action lawsuits brought under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 (Count 1). The Insurers also seek a judgment declaring that McLeod is obliged to reimburse them for the fees and expenses they incurred defending McLeod in the TCPA lawsuits (Count 2). In response, McLeod has filed a three-count counterclaim. In Count 1, McLeod seeks a judgment declaring that its insurance policies require the Insurers to defend it against the TCPA lawsuits. In Count 2, McLeod alleges that the Insurers breached the terms of the insurance policy, and in Count 3, McLeod seeks damages for the Insurers' "vexatious and unreasonable conduct" pursuant to 215 ILCS 5/155.

For reasons explained below, McLeod has filed a renewed motion for partial summary judgment on Count 1 of the Insurers' amended complaint and Counts 1 and 2 of its counterclaim (Insurers' duty to defend) and on Count 2 of the Insurers' amended complaint (reimbursement of defense costs). The Insurers have cross-moved for partial summary judgment on Count 2 of their amended complaint. For the foregoing reasons, the Court grants McLeod's motion and denies the Insurers' motion.

**Facts**

Because there is no reason to reinvent the wheel, the Court quotes from its July 5, 2006 Order in this case:

> The facts of this case are nearly identical to the facts in a number of other cases filed around the country. In a nutshell, the dispute concerns whether two insurance companies are required to defend lawsuits alleging that McLeod violated the TCPA by sending junk-faxes. In May 2003, Telecommunications Network Design, Inc. and Jerold Rawson filed class action lawsuits seeking $500 for each fax sent to thousands of class plaintiffs, who had no prior business relationship with McLeod. After initially defending the lawsuits, the Insurers changed course and refused to continue the defense, claiming that McLeod's general liability insurance policies did not cover the lawsuit.
>
> The insurance policies at issue contain two clauses that McLeod contends require the Insurers to defend the lawsuits. The first clause requires the Insurers to defend any lawsuit seeking damages for advertising injuries. Advertising injuries are defined as "oral or written publication of material that violates a person's right to privacy." The second clause requires the Insurers to defend any lawsuit seeking "property damages," unless the insured "expected or intended" the property damage to occur.

*Am. Home Assurance Co. et al. v. McLeodUSA, Inc., et al.*, No. 05 C 5173, 2006 WL 1895704 (N.D. Ill. July 5, 2006).

## Procedural Background

This is the second time the parties are before the Court on motions for summary judgment. On July 5, 2006, the Court granted in part the Insurers' motion for summary judgment, finding that they did not have an obligation to defend McLeod in the TCPA lawsuits. *See Am. Home Assurance Co.*, 2006 WL 1895704. The Court based its decision on then-controlling Seventh Circuit precedent, *Am. States Ins. Co. v. Capital Assocs. of Jackson County, Inc.*, 392 F.3d 939 (7th Cir. 2004).

In *American States*, the Seventh Circuit considered whether an insurer had a duty to defend a junk-fax lawsuit, in a case in which the insurance policy required the insurer to defend suits seeking damages resulting from an "advertising injury." *Id.* at 940. As in this case, advertising injury was defined in the policy to include "[o]ral or written publication of material that violates a person's right of privacy." *Id.* The court first noted that under the common law of tort, privacy has two principal meanings: secrecy and seclusion. *Id.* at 941. The court said that a person asserts secrecy interests when he seeks to conceal private information and asserts seclusion interests when he seeks to prevent people from (for example) ringing his doorbell late at night. *Id.* The court then examined the relevant definition of "advertising injury" and, recognizing that the language reads like coverage of the tort of invasion of privacy, concluded that it covers only alleged violations of secrecy interests. *Id.* The court held that the insurer had no duty to defend, because a junk-fax lawsuit only alleges violations of seclusion interests. *Id.* at 942-43.

The Court was bound to follow *American States* to decide the Insurers' previous motion for summary judgment because Seventh Circuit rulings on state law are authoritative until a state's highest court rules otherwise. *See Reiser v. Residential Funding Corp.*, 380 F.3d 1027,

1029 (7th Cir. 2004). Consistent with *American States*, the Court found no duty to defend. Having been relieved of their duty to defend, the Insurers then filed a motion for summary judgment on their claim seeking reimbursement of the defense costs they had already expended.

In December 2006, the Illinois Supreme Court issued its decision in *Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, __ N.E.2d __, 2006 WL 3491676 (2006). In *Valley Forge*, the Illinois Supreme Court rejected the Seventh Circuit's approach in *American States* and found that a policy providing coverage for "advertising injury" required an insurer to defend junk-fax suits brought under the TCPA. Because *Valley Forge* changed the state of the law applicable to the parties' declaratory judgment claims, the Court granted McLeod's motion to reconsider and vacated the July 5, 2006 Order. *See* Order of Dec. 11, 2006. McLeod thereafter filed a renewed motion for summary judgment, which is before the Court along with the Insurers' motion for summary judgment on the issue of defense cost reimbursement.

## Discussion

When a district court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Entry of summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

When a district court exercises diversity jurisdiction, it must apply state law as the highest court of that state would apply it. *See AAR Aircraft & Engine Group, Inc. v. Edwards*, 272 F.3d 468, 470 (7th Cir. 2001).

The Insurers acknowledge that if Illinois law applies to the Court's interpretation of the McLeod policy, they have a duty to defend the TCPA lawsuits. *See* Pl.'s Resp. Mem. at 2 ("[i]n the wake of *Valley Forge*, Insurers agree that their position is no longer supported by Illinois law."). They argue, however, that Iowa law applies. The Insurers claim that in light of the Illinois Supreme Court's decision in *Valley Forge*, Iowa law now conflicts with Illinois law[1] regarding the interpretation of the McLeod policy and, based on the "most significant contacts" test, the Court should apply Iowa law. If the Court applies Iowa law, the Insurers argue, they have no duty to defend. Rather than engage in an unnecessary conflict of laws and significant contacts analysis, the Court will assume for purposes of McLeod's motion that Iowa law controls and turn to whether the Insurers have a duty to defend.

The Iowa Supreme Court and the Iowa appellate courts have been silent regarding whether an insurer issuing a policy covering "advertising injury" has a duty to defend TCPA lawsuits. This Court must therefore predict what the Iowa Supreme Court would do if presented with this issue. *See Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004).

The Illinois Supreme Court is the only state supreme court to have addressed whether "advertising injury" potentially covers junk-fax lawsuits. *Valley Forge* is therefore a suitable place to begin our prognostication on Iowa law. In *Valley Forge*, the court began its analysis by

---

[1] Before the *Valley Forge* decision, the Insurers acknowledged that there was no conflict of laws. Therefore, they agreed that the Court should apply Illinois law to their previous motion for summary judgment. *See* Pl.'s May 4, 2006 Mem. at 11-12. *See also Sterling Fin. Mgmt., L.P. v. UBS Paine Webber*, 336 Ill. App. 3d 442, 447, 782 N.E.2d 895, 899 (2002) (where there is no conflict, Illinois choice of law principles dictate that the law of the forum state governs).

5

setting forth the principles Illinois courts use to construe insurance policies. The court identified several relevant principles: a court's primary objective in construing policy language is to ascertain and give effect to the intentions of the parties as expressed in the insurance policy; the policy is to be construed as a whole, giving effect to every provision; if the terms are unambiguous, they are to be applied as written; and if the words used are ambiguous, they will be construed against the drafter. *Valley Forge*, 2006 WL 3491676 at *5.

The policies in *Valley Forge*, like the McLeod policies, defined "advertising injury" as "written . . . publication . . . of material that violates a person's right of privacy." The Illinois Supreme Court noted that the case law is clear that receipt of an unsolicited fax advertisement implicates a person's right of privacy by violating his seclusion; such a violation is one of the injuries the TCPA attempts to prevent. *Id.* at *7 (citing, *inter alia*, *Park Univ. Enters., Inc. v. American Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1249 (10th Cir. 2006); *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 639-40 (4th Cir. 2005); *Am States*, 392 F.3d at 942)).

The court then analyzed whether the words in the "advertising injury" provision indicate that the parties intended for the policy to cover the type of injury to privacy at issue in the TCPA suit. *Valley Forge*, 2006 WL 3491676 at *7. Like the McLeod policies, the policies in *Valley Forge* did not define the terms "publication," "material," or "right of privacy." Consistent with Illinois law, the court afforded these terms their plain, ordinary, and popular meanings. *Id.* at *8. The court determined that "publication" meant communication or "announcing to the public" and that "material" was broad enough to include advertisements. The court then concluded, based on standard dictionary definitions, that the plain meaning of "right of privacy" connoted both an

6

interest in seclusion and an interest in secrecy of personal information. Based on this construction, the court held that the unsolicited fax advertisements at issue in the TCPA suits fell within the definition of "advertising injury." *Id.* at \*9. The court specifically rejected the Seventh Circuit's analysis in *American States* as inconsistent with Illinois' approach to interpreting insurance policy provisions. *Id.* at \*14.

Having set forth the Illinois Supreme Court's position on an insurer's duty to defend TCPA claims under an "advertising injury" provision, the Court must determine whether the Iowa Supreme Court is likely to reach the same conclusion. As it turns out, Iowa and Illinois courts use almost identical methods to interpret insurance policies. Among other things, Iowa and Illinois law treat the interpretation of an insurance policy, and determination of the parties' rights and duties under the policy, as questions of law that are appropriate for resolution by summary judgment. *Central Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (2004); *Lee v. Grinnell Mut. Reins. Co.*, 646 N.W.2d 403, 406 (Iowa 2002). Iowa and Illinois law both require an insurer to defend an insured if a claim is potentially within the scope of the policy's coverage. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992); *First Newton Nat'l Bank v. Gen. Cas. Co. of Wisc.*, 426 N.W.2d 618, 623 (Iowa 1988). Both Iowa and Illinois law construe an underlying complaint liberally and resolve any doubts in favor of imposing a duty to defend. *U.S. Fidelity & Guaranty Co. v. Wilkin Insulation*, 144 Ill. 2d 64, 74, 578 N.E.2d 926, 930 (1991); *Employers Mut. Cas. Co. v. Cedar Rapids Television Co.*, 552 N.W.2d 639, 642 (Iowa 1996). Iowa and Illinois law both give policy language its plain and ordinary meaning and resolve any ambiguities in favor of the insured. *Wilkin Insulation*, 578 N.E.2d at 930; *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 824

(Iowa 1987). And, most importantly for present purposes, when words are undefined in a policy, both Iowa and Illinois courts give those words their plain and ordinary meaning instead of a technical meaning. *Gillen v. State Farm Mut. Auto. Ins. Co.*, 215 Ill. 2d 381, 393, 830 N.E.2d 575, 582 (2005); *A.Y. McDonald Indus., Inc. v. Ins. Co. of N. Am.*, 475 N.W.2d 607, 619 (Iowa 1991).

The Insurers point to several of Iowa's rules of policy interpretation that, they claim, support a finding that the Iowa Supreme Court would follow *American States* and not *Valley Forge*. None of these interpretation rules support that result. Under Iowa law, words within a policy provision "must be read together and in the context of the policy to ascertain the correct meaning." *LeMars Mut. Ins. Co. v. Joffer*, 574, N.W.2d 303, 308 (Iowa 1998). The same is true in Illinois. *See Illinois Farmers Ins. Co. v. Marchwiany*, 361 Ill. App. 3d 916, 919, 838 N.E.2d 172, 176 (1998) (an insurance policy should be construed as a whole and all its provisions read together). The Insurers also point out that under Iowa law, a court must strive to give effect to all of the language of a contract and not leave a part of the language "unreasonable, unlawful or of no effect." *Weber v. IMT Ins. Co.*, 462 N.W.2d 283, 286 (Iowa 1990). Again, this is consistent with Illinois law. *See Country Cas. Ins. Co. v. Fisher*, 286 Ill. App. 3d 946, 951, 676 N.E.2d 1379, 1382 (1997) ("[i]f possible, provisions in an [insurance policy] will be reconciled in order to give effect to all of [the] provisions."). In fact, the Illinois Supreme Court said as much in *Valley Forge*. *Valley Forge*, 2006 WL 3491676 at *5 ("Like any contract, an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose.").

The Insurers point to only one area in which Iowa courts interpret insurance policies

8

differently from their Illinois counterparts.  Certain insurance policy exclusions include the phrase "arising out of."  For example, the commercial general liability policies at issue in this case exclude injuries "arising out of" the discharge of pollution.  *See* Pl.'s R. 56 Stat., Ex. D.  The Iowa Supreme Court has held that the phrase "arising out of" in an exclusion means that the excluded risk must be the "sole proximate cause" of the injury.  Pl.'s Resp. at 6 (citing *Grinnell Mut. Reinsurance Co. v. Employers Mut. Casualty Co.*, 494 N.W.2d 690, 693 (Iowa 1993)).  Illinois courts, on the other hand, interpret "arising out of" as requiring "but for causation, not necessarily proximate causation."  Pl.'s Resp. at 6 (citing *Maryland Cas. Co. v. Chicago & North Western Transp. Co.*, 126 Ill. App. 3d 150, 154, 466 N.E.2d 1091 (1984)).  The insurers cite this example as evidence that "Iowa law and Illinois law are at least occasionally in conflict as to the interpretation of particular policy terms or provisions, despite similar general rules of interpretation."  Pl.'s Resp. at 6.  That may be true, but how Iowa courts interpret "arising out of" has nothing to do with whether they would find that the term "advertising injury" potentially includes coverage for junk-fax lawsuits.

What matters is whether the Iowa Supreme Court would interpret "advertising injury" to include TCPA junk-fax suits.  The Court believes that it would.  As discussed above, Iowa and Illinois courts use virtually identical rules to interpret insurance policy provisions.  The Insurers cite no Iowa cases that indicate that these interpretation rules would yield a different result in Iowa than they did in Illinois.

The Court also notes that the Illinois Supreme Court's holding in *Valley Forge* is consistent with the holdings of the majority of other courts that have looked at this issue.  *See Park Univ. Enters., Inc.,* 442 F.3d at 1247-50; *Univ. Underwriters Ins. Co. v. Lou Fuzz Auto.*

9

*Network*, 401 F.3d 876, 881, 883 (8th Cir. 2005); *Hooters of Augusta, Inc. v. Am. Global Ins. Co.*, 272 F. Supp. 2d 1365, 1374 (S.D. Ga. 2003), *aff'd mem.,* No. 04-11077, 2005 WL 3292089 (11th Cir. Dec. 6, 2005); *Western Rim Inv. Advisors v. Gulf Ins. Co.*, 269 F. Supp. 2d 836, 848 (N.D. Tex. 2003), *aff'd mem.*, No. 03-10707, 2004 WL 1160165 (5th Cir. May 19, 2004); *Prime TV, LLC v. Travelers Ins. Co.*, 223 F. Supp. 2d 744, 752 (M.D.N.C. 2002). The only appellate court to find that "advertising injury" does not provide coverage for TCPA claims (other than the Seventh Circuit in *American States*) is the Fourth Circuit. *See Resource Bankshares Corp.*, 407 F.3d at 639-40.

In light of *Valley Forge*, the similarities between Iowa and Illinois policy interpretation rules, and the approach of the vast majority of courts that have looked at this issue, the Court is not persuaded that the Iowa Supreme Court would follow *American States* as the Insurers suggest. Rather, the Court believes it would apply *Valley Forge*. Therefore, regardless of whether Illinois or Iowa law applies, the Insurers have a duty to defend and McLeod is entitled to summary judgment.

Because the Court holds that Insurers have a duty to defend McLeod in the TCPA suits, the Insurers are not entitled to reimbursement of their defense costs. Accordingly, the Court denies the Insurers' motion for partial summary judgment on Count 2.

**Conclusion**

For the foregoing reasons, the Court grants McLeod's motion for partial summary judgment [docket no. 70] on Counts 1 and 2 of Insurers' amended complaint and on Counts 1 and 2 of McLeod's counterclaim. The Court denies the Insurers' motion for partial summary judgment [docket no. 58]. The case remains set for a status hearing on February 6, 2007 at 9:30

10

a.m., to discuss how the parties propose to proceed with what remains of the case.

                                                                   _____
                                                                   MATTHEW F. KENNELLY
                                                                   United States District Judge

Date: February 2, 2007